# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**BLACK STONE ACQUISITIONS PARTNERS I, L.P.**                                    **PLAINTIFF**

**v.**                                                                           **CIVIL ACTION NO. 1:07CV9**

**JOHNNY F. BLACK, et al.,**                                                     **DEFENDANTS**

## MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

Comes now before this Court, Plaintiff, Black Stone Acquisitions Partners I, L.P.'s ("Black Stone") Motion for Summary Judgment. The Court will also rule on the outstanding Motion in Limine, Motion to Strike Harris Tipton, and Motion to Strike Defendants Experts, Dennis James and James David Flint. After reviewing the motion, response, rules, and authorities, the Court makes the following findings:

*Factual Background*

Around 1937, the Federal Land Bank of New Orleans foreclosed on some farm property in Choctaw County, Mississippi, owned by R.W. Black. The Bank later sold the same farm land back to R.W. Black conveying all surface rights to Black but reserving a one-half interest in "all minerals." Black Stone is a successor-in-interest to the Bank's one-half interest in mineral rights claim. The Black Family, defendants in this action, own one hundred percent of the surface rights of the subject property, and the other one half interest in mineral rights as promulgated by the 1937 Deed.

In 2000, Black Stone's immediate predecessor in interest, Tormin, Inc., executed an unrecorded coal lease to the Mississippi Lignite Mining Company. That Company has been mining the lignite from the Black property and paying one half royalties to the Black Family and withholding the other half until this issue is resolved.

Black Stone filed this lawsuit on January 17, 2007, seeking to confirm and quiet title to the one half undivided mineral interest, including coal and lignite, in the subject land. The Black Family counterclaimed for a declaratory judgment that their family owned one hundred percent of the lignite on the farm land and asked the court to cancel the coal lease as a cloud on the Black's ownership interest of coal and lignite on the land.

Black Stone filed a motion for summary judgment asking the Court to rule that as a matter of law, the reservation of "all mineral" rights in the 1937 Deed encompassed lignite, thus entitling Black Stone to a declaratory judgment establishing ownership.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Id. at 323, 106 S. Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548; Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995). Conclusory allegations, speculation, unsubstantiated assertions, and

legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

*Discussion and Analysis*

The parties agree that the only issue to be decided in this case is whether the term "all minerals" in the 1937 Deed encompasses lignite. There is no Mississippi case law on point classifying lignite as a mineral. Compare Cole v. McDonald, 109 So. 2d 628 (Miss. 1959) (affirming that bentonite is a mineral); Singer v. Tatum, 171 So. 2d 134, 145 (Miss. 1965) (noting that salt, sulphur, and other minerals were covered under the phrase "mineral rights reserved"); Castle v. Harkins & Co., 464 So. 2d 513 (Miss. 1985) (treating oil and gas reserves as "minerals"); with Witherspoon v. Campbell, 69 So. 2d 384 (Miss. 1954) (holding that sand and gravel are not minerals).

However, the Plaintiff cites a Supreme Court of North Dakota case, Christman v. Emineth, for the proposition that lignite has been recognized as a mineral. 212 N.W. 2d 543 (N.D. 1973). In that case, the Federal Land Bank of St. Paul excepted and reserved a one half interest in "any and all oil, gas and other minerals." The landowner and owner of the other one half interest filed suit to quiet and confirm title and requested that the court declare lignite coal was not a mineral as contemplated by that exception. In recognition of North Dakota's precedence holding that whether a material was a mineral or not was a question of law, not fact, the trial court held that "mineral" should be construed in its ordinary and popular sense to include lignite coal so as to render it consistent with common usage and prevailing practice. Id. at 548. The Supreme Court of North Dakota affirmed the trial court's holding on the basis that coal had been held to be a mineral; the

3

language of the conveyance was clear, unambiguous, and without limitation; historical documents established that it was reasonable to assume the parties to the deed knew the existence of lignite; the State had adopted reclamation laws to repair damage done by strip-mining prior to the time of the conveyance; and the drafter in using the word "all" did not intend to restrict the construction of that phrase. Accordingly, that court held that "it is our opinion that the words 'all oil, gas and other minerals' were meant to include and do include lignite coal." Id. at 551.

This opinion from the North Dakota Supreme Court is not controlling on this court. Numerous differences between this case and Christman are evident. First, Mississippi has not held that the determination of whether something is a mineral or not is a question of law, as opposed to a question of fact. This restriction prevents this court from analyzing the historical documents to the extent the North Dakota trial court did to establish intent. That is the jury's role in Mississippi courts. Second, there is no clear indication in this case that this property was not intended to be farm land. If R.W. Black's property was intended to be farm land by all parties to the deed, that would seem to preclude the notion that lignite, a strip-mined substance, was included in the reservation of minerals. Both of these differences highlight the impracticability of using the North Dakota case law as more than persuasive authority.

The Mississippi Supreme Court has noted that "[i]t also seems to be generally recognized that the word 'minerals' has no definite and certain meaning that can be attributed to it in all cases." Witherspoon, 69 So. 2d at 386. Moreover, the United States Supreme Court has stated that "[t]he word 'mineral' is used in so many senses, dependent upon the context, that the ordinary definitions of the dictionary throw but little light upon its signification in a given case." Northern Pacific Ry. Co. v. Soderberg, 188 U.S. 526, 530, 23 S. Ct. 365, 47 L. Ed. 575 (1903). The Mississippi Supreme

4

Court has also cited that "[t]he most reasonable rule is that each case must be decided upon the language of the grant or reservation, the surrounding circumstances and the intention of the grantor if it can be ascertained." Cole v. McDonald. 109 So. 2d at 635.

As noted above, the 1937 Deed notes, "One-half interest in all minerals is reserved to the Grantor." The Defendants all admitted by deposition that the grantee, R.W. Black, never expressed to them what his intentions were when he executed the deed, no writings were made by R.W. Black concerning that reservation, and further, no mention was ever made by the grantee of the coal or lignite on that conveyed property.

The original grantor of the deed was the Federal Land Bank of New Orleans. In records maintained by the Federal Land Bank of New Orleans, the policy of reserving one half of the mineral estate to the Bank was explained as follows:

> As is pointed out above, it was early recognized that substantial losses would be sustained by the Bank and the associations in disposing of acquired farms.[1]  This was more than obvious in view of the Bank's policy of selling farms at the then prevailing market as soon after acquirement as possible. The anticipation of these losses was the basic reason for establishment of the policy of reserving a portion of the minerals, usually one-half, at the time farms were sold. It was thought that should the minerals in later years prove valuable it would afford the Bank and the associations an opportunity to recover their losses.

The Defendants argue that the Land Bank's intent was for R.W. Black to continue farming operations and pay off his loan through the proceeds received therefrom. They also cite the policy statement of the Federal Land Bank in which the Bank notes that it

> is an unwilling landowner and its policy has always been to sell acquired farms as

---

[1] From 1917 to November 30, 1939, the Federal Land Bank of New Orleans foreclosed on over 7900 Mississippi loans representing over $22,000,000 in investment.  Under their policy of selling the farms at the then prevailing rate, the Federal Land Bank lost an estimated twenty-five percent of their investment in Mississippi alone.

5

quickly as possible at prices in line with the market value at the time of sale. The purpose being to place the farms in the hands of individual farm owners at a price and on terms which offer the farmer reasonable opportunity to pay the purchase price from the farm income."

Defendants further offer that R.W. Black's first payment due on the loan to the Federal Land Bank was when the crops were ready for harvest. Thus, the Bank wished R.W. Black a successful crop season so that he could meet the terms of his agreement. Moreover, the Bank's own appraisal of R.W. Black's land lists the "mineral condition" as "not known." The Defendants assert that this evidences the Bank's intent to maintain the land as farm land, as lignite mining destroys the surface of the land. These differences of opinion in the Land Bank's motivation and intent in including the reservation of mineral rights language is enough to create a genuine issue of material fact as to the meaning of "minerals" in that context.

Plaintiff also seeks to introduce evidence through their expert, David Sansing, as to the circumstances surrounding Choctaw County and the exploration of lignite during the relevant time period. According to Sansing, a survey of historical documents and maps shows that as early as 1860 lignite was discovered in Choctaw County; a six foot bed of lignite was exposed by a railroad cut through the area in the 1880's and numerous studies were published concerning that find; in 1905, *The Choctaw Plaindealer*, a weekly newspaper published in Ackerman, published an article titled, "Mineral Resources of Mississippi," which discussed lignite as fuel; and from February through April of 1906, that same newspaper published several articles tracking the progress of a legislatively mandated geological survey of the State. Other evidence of Choctaw County's awareness of its lignite resource was found in a Mississippi Geological Survey Bulletin, entitled *Lignite in Mississippi*, which documented several outcrops of lignite in Choctaw County, as well as

6

numerous articles published in *The Choctaw Plaindealer* titled, "A Coal Mine in Ackerman," in 1908, "The Mining Industry in Choctaw," in 1920, and "Lignite Abounds in Paying Quantities in Choctaw," in 1925.

The Defendants admit that prior to the conveyance to R.W. Black, there were a few attempts to mine lignite in Choctaw County. However, the Black Family notes, the mines were shut down and abandoned by 1936, one year before the deed was executed. Defendants further contend that throughout several historical documents, including some cited by the Plaintiff, the authors have noted the impracticability of commercial exploitation of lignite in Choctaw County because it cannot be shipped or stored because as it dries, it disintegrates. Defendants further cite publications hailing the discovery of oil and gas in Mississippi, particularly in Monroe County, a neighbor of Choctaw County. This evidence, the Defendants contend, proves that oil and gas would have been the resources intended to be conveyed by the language "all minerals." As further evidence of their intent not to consider lignite a mineral, the Black Family argues that the Bank did not enter into a coal lease on that property until 1979, over forty-one years after the Bank conveyed the farm to R.W. Black.

The parties have each presented genuine issues of material fact as to what the parties' intentions were concerning the phrase "all minerals." Accordingly, Black Stone's Motion for Summary Judgment is denied.

Black Stone also filed a Motion to Strike Harris Tipton as a potential fact witness. Black Stone alleges that Tipton was not previously identified as a fact witness and was only named in a supplement on the last day of the discovery deadline. Black Stone asks the Court to either grant it an extension of time to schedule a deposition or strike his consideration as a witness for the Defendants. The Black Family responds that the documents produced during discovery are replete

with references to Harris Tipton and as the plant manager of Mississippi Lignite Company's Red Hills Mine, Black Stone should have anticipated his being called as a witness.

In an effort to promote fairness, the Court extends to Black Stone a discovery period for the purpose of deposing Harris Tipton from the date of this order until September 8, 2008. Thus, Plaintiff's Motion to Strike Harris Tipton is denied.

Plaintiff also filed a Motion to Strike Defendants' Experts, Dennis James and James David Flint. Black Stone alleges that there is nothing in either of these experts' reports which will assist the trier of fact in determining the intent of the parties to the 1937 deed. Therefore, Black Stone argues, these experts' opinions are not of consequence to the determination of the action and are not relevant. The Black Family responded that as the term "minerals" in ambiguous, the Mississippi Supreme Court has stated that numerous things need to be looked at to determine the correct interpretation of that term. One of those avenues is through Dennis James and James David Flint's opinions.

The Court finds that this testimony may aid in the determination of what a mineral technically is and could be, therefore, relevant. Moreover, Plaintiff has itself designated David Williamson as an expert to rebut James' and Flint's testimony. Thus, the expert testimony of Dennis James and James David Flint as to the geological definition of minerals will be permitted.

Black Stone also brings a motion in limine to preclude Defendants' experts from testifying beyond their expert reports. The Black Family acknowledges that the expert testimony must be limited to the expert report but notes that both experts have been designated as fact witnesses as well.

Because Dennis James and James David Flint have been designated as fact and expert witnesses, their expert opinions do not contain any factual basis for their knowledge or expert

conclusions, and Plaintiff did not depose either experts on the basis of any factual knowledge, the Court will allow Dennis James and James David Flint until September 8, 2008, to supplement their reports with all relevant matters within their expert and factual knowledge to which they expect to testify.

*Conclusion*

Accordingly, there exists genuine issues of material fact as to prevent summary judgment at this stage. Therefore, Plaintiff's Motion for Summary Judgment is DENIED. Also, Plaintiff's Motion to Strike Harris Tipton as one of Defendants' fact witnesses is DENIED. Plaintiff is hereby given until September 8, 2008, to depose Harris Tipton. Plaintiff's Motion to Strike Dennis James and James David Flint and Motion in Limine are also DENIED, and those persons will be able to supplement their expert reports until September 8, 2008, with all information on which they expect to testify to at trial.

SO ORDERED, this the  6th   day of August, 2008.

 /s/ Sharion Aycock      
**U.S. DISTRICT JUDGE**